UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| DAVE McNESBY, | : | CIVIL ACTION NO. 3:CV-16-0602 |
|---|---|---|
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| M. Heenan, et al., | : | |
| Defendants | : | |

## MEMORANDUM

### I. Background

Plaintiff, an inmate confined in the Mahanoy State Correctional Institution ("SCI-Mahanoy"), Frackville, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1, complaint). He seeks compensatory and punitive damages for Defendants alleged indifference to Plaintiff's safety, when they celled Plaintiff with inmate Michael Tyron, in violation of the Eighth Amendment. Id. The named Defendants are SCI-Mahanoy Superintendent Kerestes; SCI-Mahanoy Unit Manager Heenan; and Chief Grievance Officer Dorina Varner. Id

Presently before the Court is Defendants' motion for summary judgment. (Doc. 15). Defendants seek entitlement to judgment, inter alia, for Plaintiff's failure to exhaust administrative remedies and for failure to establish personal involvement of Defendants, Kerestes and Varner, in any constitutional violation.

(Doc. 16). For the reasons set forth below, the Defendants' motion for summary judgment will be granted.

## II. **Summary Judgment**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex,

477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

III. **Statement of Facts[1]**

The statement of undisputed facts is limited to Plaintiff's exhaustion of administrative remedies and Defendants' involvement therein.

On August 29, 2014, Plaintiff was moved into Building C, Block A, cell 1019 in SCI-Mahanoy. (Doc. 18-4 at 2, Inmate Cell History).

On October 14, 2014, Inmate Tyron, who was also incarcerated at SCI-Mahanoy, was placed in Building C, Block A, cell 1010 with Plaintiff. (Doc. 18-5 at 2, Inmate Cell History). Defendant Heenan made the decision to cell Tyron with Plaintiff. Doc. 18-6 at 2, Declaration of Michelle Heenan at ¶ 3). At the time Heenan placed Tyron with Plaintiff, she had no knowledge of Tyron's history of setting fires at a prior institution. Id.

---

[1] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendants, all material facts set forth in Defendants' statement (Doc. 50) will be deemed admitted.

4

On October 17, 2014, at 3:41 a.m., staff responded to a fire in cell 1019. (Doc. 18-7 at 2, Occurrence Description). Inmate Tyron was issued a misconduct for setting the fire. Id. Plaintiff was treated for smoke inhalation. (Doc. 18-8 at 2, Progress Notes). As of 9:00 a.m., Plaintiff was asymptomatic and discharged back to his Block. Id. Plaintiff told medical personnel that his cellie was threatening him all night prior to the fire and he then just went to sleep. Id.

On October 24, 2014, Plaintiff filed Grievance No. 533269, complaining that his inmate suffers from mental problems and is putting his life in danger. (Doc. 18-2 at 2, Grievance No. 533269). There is no specific Defendant named in Plaintiff's grievance as being directly involved in the complained of event. Id. Plaintiff requested the following for relief:

1. Z Code due to the trauma from this incident.
2. Bottom bunk status, due to me being on top bunk when Mr. Tyron lit the bottom bunk on fire.
3. I would like to file charges against Mr. Tyron for endangering my life and well being, causing severe emotional distress and problems.
4. Compensatory, punitive and nominal damages due to my mental health state and physical damage done. I'm now suffering from extreme anxiety, depression, breathing problems and PTSD symptoms.

Id. On October 27, 2014, Plaintiff's grievance was received by Grievance Coordinator Jane Hinman. Id.

On November 16, 2014, Acting Unit Manager Heenan denied Plaintiff's

grievance with the following:

> Inmate McNesby, you are grieving the fact that your former cellmate (Tyron KV1063) was unpredictable and you submitted two cell agreements that were never acknowledged. You also claim that your former cellmate started making threatening comments and said that he told the Lieutenant and Sergeant he would hurt himself or someone else if they didn't believe him. You then claim he showed you paperwork from SCI-Frackville where he lit a cell on fire.
>
> According to the inmate Handbook page 10 letter B. Cell Assignments - "Upon initial reception into the DOC and after transfer to other facilities, you will be evaluated for your cell assignment. Cell assignments will be based on the staff's evaluation of your previous behavior in a facility. Cell assignments will not be made based solely on race. It is your responsibility to inform the staff of any preferences you have about your cell assignment. A preference filed by you will be assessed by staff but not necessarily granted."
>
> In speaking with myself and Major Damore, you stated you felt threatened by your cellmate's comments, and DOC staff should have known you were in danger. However, between 15:30 pm and 3:30 am you had the opportunity to hit your cell button to alert the block CO that there were issues, and during that time frame, there were four scheduled counts, in which the CO walked and stopped at your cell door. You at no time told staff during that time frame that you felt threatened or that you were in danger.
>
> In conclusion, I find this grievance to be without merit and is therefore denied.

(Doc. 18-2 at 4, Initial Review Response).

On November 16, 2014, Plaintiff appealed the denial of Grievance No. 533269 to the Facility Manager. (Doc. 18-2 at 5, Appeal). Plaintiff's appeal contained no reference to any specific individual as being directly involved in the

6

complained of event.  Id.

By Response dated December 1, 2014, the Facility Manager upheld the initial response, stating that "[my] review of these documents indicates that Ms. Heenan has properly researched your issues and has provided you with an appropriate response."  (Doc. 18-2 at 7, Facility Manager's Appeal Response).

On December 12, 2014, Plaintiff filed an appeal to final review, (Doc. 18-2 at 8, Inmate Appeal to Final Review), which was denied on January 30, 2015, with the following response:

> You state that on 10/16/2014 your cellmate made a scene during TC in which the officers had to lock the block down.  You state that your cellmate was making threats to everyone and using profanities.  You state that after staff spoke to him you were told to lock in.  You state that you felt threatened by what your cellmate was telling you and the next morning you woke up to your cell being filled with smoke due to your cellmate starting a fire.  Your concerns have been reviewed.  Review of the initial review response indicates that it adequately addressed your concerns.  Records reflect that you did not advise staff that you felt threatened or were in danger.  Therefore, your grievance appeal to this office is denied as well as your requested relief.

(Doc. 18-2 at 10, Final Appeal Decision).


**IV.    Discussion**

    **A. Exhaustion**

The Prison Litigation Reform Act requires that inmates exhaust the

administrative remedies that are available to them prior to bringing suit in federal court. 42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983) or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted." Id.

The United States Supreme Court has repeatedly confirmed that "[t]here is no question that exhaustion is mandatory under the PLRA." Ross v. Blake, ––– U.S. –––, 136 S.Ct. 1850, 1856, 195 L.Ed.2d 117 (2016), quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006), accord Jones v. Bock, 549 U.S. 199, 211 (2007). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [ ] [special] circumstances into account." Ross at 1856.

Because the PLRA is a statutory exhaustion provision, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857. Accordingly, exhaustion is required regardless of the availability of the requested relief, and regardless of the nature of the underlying claim, whether it arises from excessive force, or a violation of the constitution. Id., citing, Booth v. Churner,

8

532 U.S. 731, 741 (2001); Porter v. Nussle, 534 U.S. 516, 520 (2002); Woodford, 548 U.S. at 91.

Additionally, exhaustion must be "proper," which "demands compliance with an agency's deadlines and other critical procedural rules." Woodford, at 90. This serves to protect "administrative agency authority" over the matter, giving an agency "an opportunity to correct its own mistakes ... before it is haled into federal court," and "discourages 'disregard of [the agency's] procedures." Id. at 89, quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992).

The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are provided for in Department of Corrections Administrative Directive 804. See www.cor.state.pa.us, DOC Policies, DC-ADM 804, Inmate Grievance System Policy ("DC-ADM 804"). This policy establishes the Consolidated Inmate Grievance Review System, through which inmates can seek to resolve issues relating to their incarceration. Id. The first step in the inmate grievance process is initial review. Id. Grievances must be submitted for initial review within 15 working days after the event upon which the grievance is based. Id. After initial review, the inmate may appeal to the superintendent of their institution. Id. Upon completion of the initial review and the appeal from the initial review, an inmate may seek final review. Id.

Importantly, the policy specifically requires that the grievant specifically name the individuals involved in the events complained about:

> 12. The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of facts relevant to the claim.
>
> * * * *
>
> b. The inmate shall identify individuals directly involved in the event(s).

Id.

The record before this Court reveals that Plaintiff exhausted to final review, a grievance pertaining to his cellmate threatening him and endangering his life. However, at no time does Plaintiff identify any of the named Defendants within his grievance or subsequent appeals.

"[I]n the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Commonwealth, 146 F. App'x 554, 557 (3d Cir. 2005). Where, as here, the provisions of a grievance process expressly require the identification of named defendants, the Court of Appeals for the Third Circuit has found procedural default in an inmate's failure to comply as instructed. See, e.g., Rosa-Diaz v. Dow, 683 Fed.App'x. 103, 105–06 (3d Cir. 2017) (inmate procedurally defaulted on claim where grievance policy

10

required identification of defendants, and inmate failed to name particular defendant in grievance related to assault); Watts v. Herbik, 364 Fed.App'x. 723 (3d Cir. 2010) (finding that Watts' failure to mention Tretinik in his administrative grievance and did not place him on notice of alleged wrongdoing, Watts procedurally defaulted all claims against him).

In Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under § 1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in § 1997e(a)." Id. at 231, 232. As explained in Spruill, "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." Spruill, 372 F.3d at 234. The current version of DC-ADM 804 is even more compelling given the inclusion of the phrase "shall identify."

In this case, while Plaintiff presented and pursued a grievance which made complaints about his cellmate, and Plaintiff's concern for his safety, he failed to ever identify any individual that was directly involved with the assigning of inmate

11

Tyron to his cell. McNesby offers no explanation as to why he did not name Defendant Heenan in his grievance. Thus, he has sustained a procedural default.

In <u>Spruill</u>, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In <u>Pusey v. Belanger</u>, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied <u>Spruill</u> to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In <u>Berry v. Kerik</u>, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in <u>Pozo</u>, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to grant summary

judgment, as a matter of law, in favor of Defendant Heenan.

B. **Personal Involvement**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. Parratt v. Taylor, 451 U.S. 527 (1981); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir.1993); Beattie v. Dept. of Corrections SCI–Mahanoy, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002).

Moreover, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of respondeat superior. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir.1976); Parratt, supra. The doctrine of respondeat superior does not apply to constitutional claims. See Ashcroft v. Iqbal, 556 U.S. 662, (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior."); see also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of respondeat superior ) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)).

Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. Iqbal, 556 U.S. at 675 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

See also Beattie v. Dept. of Corrections SCI–Mahanoy, 2009 WL 533051, *3 ("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing Rode, supra.

Finally, a prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action. Glenn v. Delbalso, 599 Fed.App'x. 457 (3d Cir. 2015)(access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983); Mincy v. Chmielsewski, 506 Fed. App'x. 99 (3d Cir. 2013)(an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement); Brooks v. Beard,

167 Fed. App'x. 923 (3d Cir. 2006)(holding that although the complaint alleges that Appellees responded inappropriately to Brook's later-filed grievances about his medical treatment, these allegations do not establish Appellees' involvement in the treatment itself).

It is apparent from Plaintiff's allegations that the only roles of Defendants Kerestes and Varner, were connected to the filing of Plaintiff's grievance and subsequent appeals. However, such claims that these Defendants violated his constitutional rights regarding their handling of his grievance, fails as a matter of law, and these Defendants are entitled to dismissal. Thus, Defendants Kerestes and Varner are entitled to summary judgment as a matter of law.

## IV.  Conclusion

Defendants' motion for summary judgment is granted. An appropriate order will follow.

Dated: October 5, 2017                            /s/ William J. Nealon
                                                                    **United States District Judge**

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVE McNESBY, | : | CIVIL ACTION NO. 3:CV-16-0602 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| M. Heenan, et al., | : | |
| Defendants | : | |

# **ORDER**

**AND NOW, THIS 5th DAY OF OCTOBER, 2017**, for the reasons set forth in the Memorandum of this date, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion for summary judgment (Doc. 15) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

2. The Clerk of Court is directed to **CLOSE** this case.

3. Any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

    /s/ William J. Nealon
**United States District Judge**